UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO. 4:09-CV-00097

ALPHA ROSE DOWNS and JOSEPH                                    PLAINTIFFS
MICHAEL DOWNS as administrators of
the estate of ANGELA ROSE DOWNS,
deceased, and S.R.B., an infant, by and through
her grandparents and statutory guardians
and next of friends, ALPHA ROSE DOWNS
and JOSEPH MICHAEL DOWNS

v.

GRAYSON COUNTY FISCAL COURT,                                   DEFENDANTS
et al.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants' Motion for Summary Judgment [DN 25], Plaintiffs' Motion for Summary Judgment [DN 31], and Plaintiffs' Motion to Amend the Pleadings [DN 32] to add Betty Milam as a defendant to this action. Fully briefed, the matters are ripe for decision.

### I. STANDARD OF REVIEW

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and of identifying that portion of the record which demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving

party, the non-moving party is required to do more than simply show there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The rule requires the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252.

## II.  FACTUAL BACKGROUND

This case involves the tragic death of 23 year old Angela Rose Downs who took her own life while incarcerated at the Grayson County Detention Center ("GCDC"). Ms. Downs was admitted as a pretrial detainee to GCDC on February 6, 2009. Pursuant to GCDC intake procedure, Ms. Downs immediately underwent a medical evaluation in which it was determined she was not at risk for suicide. However, due to an infection in her arm, she received medical treatment through the GCDC medical department and was placed in a cell equipped with a surveillance camera so that she could be observed from the GCDC's monitoring room. The parties dispute whether she was on "suicide watch" or "medical watch," but in any event her condition was to be checked every 10 minutes. On February 8, Ms. Downs was discovered hanging by a breathing machine tube which had been tied to a speaker grate in her jail cell. Upon discovering Ms. Downs, the officers immediately summoned medical assistance, but did not begin resuscitation efforts for nearly 6 minutes.

Prior to Ms. Downs's death, Deputy Henderson, the officer assigned to the monitoring room

that evening, recorded on a suicide watch sheet that Ms. Downs had been sitting on a mat in her cell. However, after reviewing the surveillance tape from Ms. Downs's cell, it was determined that Ms. Downs had actually been hanging for 1 hour and 28 minutes[1]. This action was initiated by Ms. Downs's parents and child to recover damages associated with her death.

### III. DISCUSSION

Plaintiffs brought this 42 U.S.C. § 1983 suit against Grayson County, Grayson County Fiscal Court ("GCFC"), GCDC, and named employees of GCDC in both their individual and official capacities. Section 1983 establishes "a cause of action for deprivation under color of state law, of any rights, privileges or immunities secured by the Constitution or laws of the United States." Horn v. Madison Cnty. Fiscal Court, 22 F.3d 653, 656 (6th Cir. 2002). To state a valid § 1983 claim, a plaintiff must allege: (1) "a right secured by the Constitution and laws of the United States"; and (2) "that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988). There is no dispute that Defendants were acting under color of state law, but there is a question as to whether an Eighth Amendment constitutional violation occurred under the facts presented here.

Plaintiffs allege that Defendants violated Ms. Downs's Eighth Amendment rights because: (1) the named Defendant GCDC officers failed to monitor her status every 10 minutes as prescribed by jail policy; (2) certain named Defendant GCDC officers failed to immediately attempt resuscitation efforts once Ms. Downs was discovered hanging; (3) prison supervisors failed to properly train the GCDC officers; and (4) Grayson County, GCFC, GCDC, and Jailer Darwin

---

[1] Plaintiffs' Response also states that Ms. Downs had been hanging for 1 hour and 13 minutes prior to being discovered.

Dennison failed to properly train the prison officials and promulgate policies that would have prevented Ms. Downs's death. Defendants claim that Plaintiffs' § 1983 claims must fail as a matter of law because Plaintiffs can not prove an Eighth Amendment violation. Although Plaintiffs have also alleged several different constitutional, Kentucky statutory, and state-law tort claims, Defendants allege that Plaintiffs' inability to prove a constitutional violation requires the remainder of Plaintiffs' claims to also be dismissed. In the alternative, Defendants allege they are protected by official and sovereign immunity. Finally, Defendants claim that the state-law negligence claims should be dismissed because Defendants did not breach a duty or cause Ms. Downs's death. The Court will address each argument in turn.

**A. Eighth Amendment**

The Eighth Amendment's Cruel and Unusual Punishment Clause requires prison officials to ensure the "reasonable safety" of inmates. Shepard v. Daviess Cnty. Det. Ctr., 2011 WL 9342, at *6 (W.D. Ky. Jan. 3, 2011). "While the Eighth Amendment does not apply to pre-trial detainees, the Due Process Clause of the Fourteenth Amendment does provide them with a right to adequate medical treatment that is analogous to prisoners' rights under the Eighth Amendment." Gray v. City of Detroit, 399 F.3d 612, 615-16 (6th Cir. 2005). See Watkins v. City of Battle Creek, 273 F.3d 682, 685-86 (6th Cir. 2001). Therefore, any § 1983 damages in this case must be pursued through the framework of the Eighth Amendment.

Although "the [Eighth Amendment] right to medical care for serious medical needs does not encompass the right to be screened correctly for suicidal tendencies, . . . prison officials who have been alerted to a prisoner's serious medical needs are under an obligation to offer medical care to such a prisoner." Comstock v. McCrary, 273 F.3d 693, 702 (6th Cir. 2001) (quotation omitted). "It

4

is not, however, every injury suffered by one prisoner . . . that translates into constitutional liability for prison officials responsible for the victim's safety." Farmer v. Brennan, 511 U.S. 825, 834 (1994). In order to recover § 1983 damages for an Eighth Amendment violation, a plaintiff must prove both an objective and subjective component. The objective prong requires a plaintiff to show that the inmate's medical needs were "'sufficiently serious.'" Comstock, 273 F.3d at 702-03 (quoting Farmer, 511 U.S. at 834). The second element is subjective and requires that the defendant act with "deliberate indifference" to a prisoner's health or safety. Wilson v. Seiter, 501 U.S. 294, 302-03 (1991). Defendants concede that the objective prong is satisfied under these facts, so the question here is whether Defendants acted with deliberate indifference.

The Eighth Amendment's deliberate indifference prong is grounded in the principle that "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." Wilson, 501 U.S. at 297. In order "[t]o violate the Cruel and Unusual Punishments Clause, a prison official must have a sufficiently culpable state of mind." Farmer, 511 U.S. at 834 (quotation omitted). Therefore, "'[d]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 410 (1997). It "requires a degree of culpability greater than mere negligence, but less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Perez v. Oakland Cnty., 466 F.3d 416, 424 (6th Cir. 2006) (quotation omitted). Accordingly, a plaintiff attempting to establish deliberate indifference must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. See

5

Comstock, 273 F.3d at 702-03 (A showing of deliberate indifference requires a plaintiff to "allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk."). More specifically, the Sixth Circuit has held that the appropriate inquiry in § 1983 detainee suicide cases such as this is "'whether the decedent showed a strong likelihood that he would attempt to take his own life in such a manner that failure to take adequate precautions amounted to deliberate indifference to the decedent's serious medical needs.'" Gray, 399 F.3d at 616 (quoting Barber v. City of Salem, 953 F.2d 232, 239-40 (6th Cir. 1992)).

### 1. GCDC Prison Officers

Defendants maintain they are entitled to summary judgment on Plaintiffs' deliberate indifference claim because Plaintiffs cannot show that GCDC or any of its employees had actual knowledge that Ms. Downs was a risk of suicide. Plaintiffs, on the other hand, argue that the Defendants had actual knowledge that Ms. Downs posed a substantial risk of suicide because they placed her on "suicide watch." Defendants counter arguing that Ms. Downs was placed on "medical watch" not "suicide watch."

In support of their claim that Ms. Downs was placed on suicide watch, Plaintiffs point to the fact that Defendants knew Ms. Downs was crying and upset upon entry into the jail and that she was likely to suffer withdrawal symptoms; that the officers were using a suicide watch form to record Ms. Downs's activities every ten minutes, instead of twenty which is typical for medical watches; that she was not held in the medical unit and watched by medical personnel, rather, Ms. Downs was placed in a cell behind the booking area equipped with video surveillance; and that she was only given a mat and blanket. Defendants argue that Ms. Downs was not on suicide watch because she

was not placed in a suicide smock, did not have a suicide blanket, was not restricted to finger food, was allowed to have personal belongings in her cell, and that the suicide watch form was printed due to clerical error. Drawing all inferences in favor of the Plaintiffs, a jury could conclude that Ms. Downs was placed on suicide watch. Likewise, a jury could conclude that she would not have been placed on suicide watch had there not a reason to believe she was at a substantial risk of suicide if precautions were not taken. Therefore, there is evidence from which to infer actual knowledge.

However, the only officer appearing to be indifferent to the risk of serious harm to Ms. Downs is Officer Henderson, who was tasked with monitoring Ms. Downs's status. Deliberate indifference requires more than mere negligence. A simple failure to notice or comprehend Ms. Downs's actions on the video surveillance monitors would perhaps qualify as mere negligence, but here, there is evidence to suggest that Officer Henderson was simply not watching at all. The jury may find from the facts of this case that Officer Henderson was aware of Ms. Downs's substantial risk of suicide and her failure to properly monitor her was deliberately indifferent to the risk.

As for the remaining officers, they were not charged with the responsibility to watch Ms. Downs and there is no evidence that their actions were deliberately indifferent. Therefore, summary judgment will be granted to all officers on the § 1983 claims except for Officer Henderson.

### 2. Failure to Provide Adequate Medical Treatment

Plaintiffs further argue that several of the officers exhibited deliberate indifference because they waited nearly 6 minutes from the time of her discovery to begin resuscitation efforts. "A cause of action under § 1983 for failure to provide adequate medical treatment requires a showing that the defendants acted with deliberate indifference to the serious medical needs of the pretrial detainee." Spears v. Ruth, 589 F.3d 249, 254 (6th Cir. 2009) (quotation omitted). However, the deliberate

7

indifference requirement is satisfied "only if [the official] knows that inmates face a substantial risk of serious harm and *disregards that risk by failing to take reasonable measures to abate it*." Farmer, 511 U.S. at 847(emphasis added). See Preyor v. City of Ferndale, 248 F. App'x 636, 644 (6th Cir. 2007) ("[O]fficials who actually knew of a substantial risk to [a detainee's] health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted."). In the instant case, the Court finds that the responding officers acted reasonably once they become cognizant that Ms. Downs had attempted suicide.

     The facts alleged by Plaintiffs are similar to those in Rich v. City of Mayfield Heights, 955 F.2d 1092 (6th Cir. 1992), where a pretrial detainee attempted to hang himself in a jail cell. Once discovered, the prison guards called the paramedics but did not immediately lower the detainee and begin resuscitation efforts. Id. at 1094. The plaintiff claimed that his Eighth Amendment rights were violated because he was left hanging while the officers summoned medical assistance. Id. at 1097. The Sixth Circuit, however, found that "[b]ecause medical care was summoned promptly . . . [the detainee's] constitutional rights were not violated." Id. Here, Officer Swift immediately cut the tubing that was holding Ms. Downs and notified Officer Vanmeter that he needed medical assistance. Officer Vanmeter promptly called 911 and GCDC medical staff was also summoned. Several of the officers then began chest compressions and CPR nearly 6 minutes from the time Ms. Downs was discovered hanging. Because the Defendants immediately summoned medical care, they were not deliberately indifferent for failing to begin resuscitation efforts themselves. See Bahner v. Carmack, 107 F.3d 875, at *2 (1997) (unpublished table decision) (per curiam) (failure of deputy to perform CPR after finding hanging prisoner until another officer had arrived approximately 7 minutes later was not deliberate indifference); Tagstrom v. Enockson, 857 F.2d 502, 503-04 (8th Cir.

8

1988) (Eighth Circuit finding police officer who promptly called an ambulance, as opposed to rendering medical assistance himself, "was in no way deliberately indifferent to [the plaintiffs] medical needs."); Maddox v. City of Los Angeles, 792 F.2d 1408, 1415 (9th Cir. 1986) (Ninth Circuit recognizing that "[d]ue process requires that police officers seek the necessary medical attention for a detainee when he or she has been injured while being apprehended by either promptly summoning the necessary medical help or by taking the injured detainee to the hospital."); Ables v. Shelby Cnty., Tennessee, 2010 WL 3024959, at *4 (W.D. Tenn. July 29, 2010) (No deliberate indifference where "upon becoming aware of Mrs. Ables's need for medical assistance, Deputy McNinch reacted immediately by calling for the paramedics."); Harvard v. Puntuer, 600 F. Supp. 2d 845, 860 (E.D. Mich. 2009) (noting that the "operative concept" behind the holdings in Maddox, Tagstrom, and Rich is the "promptness" in which the defendants acted to secure medical attention); Teasley v. Fowler, 548 F. Supp. 2d 694, 709 (E.D. Mo. 2008) (Officer's obligation to provide medical care under the Fourteenth Amendment "is fulfilled . . . by promptly summoning the necessary medical help or by taking the injured detainee to the hospital.") (quotation omitted).

Accordingly, Defendants are entitled to summary judgment on the § 1983 claim of failure to provide adequate medical treatment.

### 3. Supervisor Liability

Plaintiffs also allege that the Defendant supervisors were deliberately indifferent for failing to properly supervise and train personnel on the risk of detainee suicide and how to properly perform a 10 minute watch. However, Plaintiffs cannot hold Defendants liable under § 1983 because they supervised the alleged offenders of Ms. Downs's constitutional rights; "[r]espondeat superior is not a proper basis for liability under § 1983." McQueen v. Beecher Cmty. Schs., 433

F.3d 460, 470 (6th Cir. 2006). "Nor can the liability of supervisors be based solely on the right to control employees, or simple awareness of employees' misconduct." Id. (quotation omitted). "In order for supervisory liability to attach, a plaintiff must prove that the official 'did more than play a passive role in the alleged violation or showed mere tacit approval of the goings on.'" Loy v. Sexton, 132 F. App'x 624, 626 (6th Cir. 2005) (quoting Bass v. Robinson, 167 F.3d 1041, 1048 (6th Cir. 1999)). See Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir. 1984) ("At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate."); Tate v. Coffee Cnty., Tennessee, 48 F. App'x 176, 181 (6th Cir. 2002) ("[A] failure of a supervisory official to supervise, control, or train the offending individual officers is not actionable absent a showing that the official either encouraged the specific incident of misconduct or in some other way directly participated in it.") (quotation omitted). In other words, "liability under § 1983 must be based on active unconstitutional behavior." Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999).

Plaintiffs have not alleged that any supervisors authorized, approved, or knowingly acquiesced in any unconstitutional conduct. There is nothing in the record to indicate that any of the supervisory staff had notice that the policies were ineffective or not being carried out as written. See Gibson v. Foltz, 963 F.2d 851, 854 (6th Cir. 1992) ("Failure to supervise adequately, especially without a showing that the defendants were aware that subordinates had failed to carry out prison policies, does not constitute a wanton infliction of pain."). Nor is there any evidence that any of the supervisors failed to properly monitor Ms. Downs's status themselves. Therefore, this claim is also dismissed.

### 4. Jailer Darwin Dennison

Plaintiffs argue that Darwin Dennison, the County Jailer, was deliberately indifferent because he failed to implement corrective procedures to clear any confusion over the obvious risk of failing to properly conduct a 10 minute watch, failed to train the corrections officers on how to properly perform a 10 minute watch, and allowed a custom of ignoring prescribed watch procedures to become an accepted practice. The Sixth Circuit has "recognize[d] that . . . [Dennison] could be held individually liable if [his] failure to promulgate adequate policies . . . reached the level of deliberate indifference to [Ms. Downs's] serious medical needs." Tate, 48 F. App'x at 180. See Taylor v. Michigan Dept. of Corr., 69 F.3d 76, 81 (6th Cir. 1995) (holding that a prison supervisor can be held individually liable for failing to adopt and implement operating procedures "in the face of actual knowledge of a breakdown in the proper workings of the department"); Redman v. Cnty. of San Diego, 942 F.2d 1435, 1446-47 (9th Cir. 1991) (holding that where a supervisor implements an unconstitutional policy, liability is direct, not vicarious). "To establish such liability, [Plaintiffs] would have to show subjective knowledge on the part of [Dennison] that the prison policy . . . was inadequate and was putting the inmates at serious risk." Tate, 48 F. App'x 176 at 181. However, it is unclear from the briefing what suicide prevention training programs, policies, or customs were implemented by Dennison or whether Dennison had knowledge of any inadequacies that may have been cured by corrective policies. This issue needs further briefing before the Court can decide it and thus, summary judgment in favor of either party is inappropriate at this time.

### 5. Grayson County, GCDC, GCFC, and Official Capacity Claims

As an initial matter, it should be noted that suing the individual defendants in their official capacity, GCFC, GCDC, and Grayson County is a redundancy; these claims are all synonymous

with a suit against the county itself. See Kentucky v. Graham, 473 U.S. 159, 166 (1985) ("[W]hile an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself."); Jones v. Binion, 2011 WL 1458429, at *9 (E.D. Ky. Apr. 15, 2011) ("[C]ase law in the Sixth Circuit equates a suit against a county fiscal court with a suit against the county itself."); Potts v. Shrewsberry, 2010 WL 2572808, at *2 (W.D. Ky. June 23, 2010) (rather than dismissing the detention center, the court found that the claims against the Breckinridge County Detention Center were actually claims against Breckinridge County); Marbry v. Corr. Med. Servs., 2000 WL 1720959, at *2 (6th Cir. Nov. 6, 2000) (unpublished table decision) (upholding dismissal of Shelby County Jail because it is not a "person" under § 1983 and therefore not subject to suit). Therefore, the Court will construe Plaintiffs' official capacity claims as well as the claims against GCDC and GCFC as being brought against Grayson County itself.

Similar to the claims levied against Dennison, Plaintiffs argue that Grayson County was deliberately indifferent because they failed to implement corrective procedures, failed to properly train the corrections officers, and allowed a custom of ignoring prescribed watch procedures to become an accepted practice. "[T]he touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution." Kohler v. City of Wapakoneta, 381 F. Supp. 2d 692, 712 (N.D. Ohio 2005) (quotation and citation omitted). "To succeed on a municipal liability claim, [Plaintiffs] must demonstrate both: (1) the deprivation of a constitutional right, and (2) that the City is responsible for that violation." Abdul-Khaliq v. City of Newark, 275 F. App'x 517, 522 (6th Cir. 2008). Thus, "in order to state a claim against a city or county under § 1983, a plaintiff must show that his injury

12

was caused by an unconstitutional 'policy' or 'custom' of the municipality." Stemler v. City of Florence, 126 F.3d 856, 865 (6th Cir. 1997); Monell v. Dep't of Social Servs. of City of New York, 436 U.S. 658, PIN (1978). "A municipality may [also] be liable under § 1983 where the risks from its decision not to train its officers were 'so obvious' as to constitute deliberate indifference to the rights of its citizens. As applied to suicide claims, . . . [w]here such a risk is clear, the municipality has a duty to take reasonable steps to prevent the suicide." Gray, 399 F.3d at 618.

Defendants' argue that the County is immune from suit under the Eleventh Amendment's sovereign immunity principle as a political subdivision of the state. Contrary to Defendants' argument, Defendants are not arms of the state entitled to Eleventh Amendment immunity. "The bar of the Eleventh Amendment to suit in Federal courts extends to States and state officials in appropriate circumstances . . . but does not extend to counties and similar municipal corporations." Alkire v. Irving, 330 F.3d 802, 811 (6th Cir. 2003). See N. Ins. Co. of New York v. Chatham Cnty., Ga., 547 U.S. 189, 193-94 (2006) (noting that "this Court has repeatedly refused to extend sovereign immunity to counties" and that "municipalities, unlike [s]tates, do not enjoy a constitutionally protected immunity from suit").

Again, the briefs do not completely address this issue. Therefore the Court finds it premature to rule on Grayson County's liability until the arguments are further fleshed out. Accordingly, summary judgment is inappropriate as to Grayson County's liability at this time.

**B. Pendant State Law Claims**

Plaintiffs have also alleged several negligence claims. Defendants claim that they did not breach a duty owed to Ms. Downs and in the alternative there is no evidence that Defendants caused

13

Ms. Downs's injury.[2] However, sufficient issues of fact exist that would allow a jury to conclude that Defendants were negligent for failing to exercise ordinary care under the circumstances. Therefore, Defendants' motion is denied in this respect as well.

### C. Motion to Amend Complaint to Add Betty Milam as a Party Defendant

Plaintiffs have moved to add Betty Milam as a party defendant to this action to replace the previously pleaded John and Jane Does. Plaintiffs allege that unless the Court grants leave to amend, complete relief cannot be granted. Defendants argue that the motion should be denied because Plaintiffs delay in moving for the amendment to the pleadings is inexcusable and prejudicial.

The Federal Rules of Civil Procedure state that after a responsive pleading has been served, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). A district court should freely grant a plaintiff leave to amend a complaint "when justice so requires." Id. However, a district court may deny a motion to amend where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." Foman v. Davis, 371 U.S. 178, 182 (1962).

The Court finds that allowing Plaintiffs to add Milam as a party defendant to this action would cause undue delay and prejudice. "Delay becomes 'undue,' and thereby creates grounds for the district court to refuse leave [to amend], when it places an unwarranted burden on the court[,]

---

[2] Although briefed by Plaintiffs in their Response, Defendants never assert qualified official immunity as a defense to the negligence claims brought against them in their individual capacities. Therefore, the argument will not be addressed by the Court.

14

when the plaintiff has had previous opportunities to amend," or when it places "an unfair burden on the opposing party." Bjorgung v. Whitetail Resort, LP, 550 F.3d 263, 266 (3d Cir. 2008); Morse v. McWhorter, 290 F .3d 795, 800 (6th Cir. 2002). Pursuant to the scheduling order, Plaintiffs were required to amend their Complaint by July 6, 2010. Plaintiffs were aware of the facts supporting Betty Milam's possible involvement in this case through Wanda Miller's deposition on July 23, 2010. Plaintiffs even took Ms. Milam's deposition on October 7, 2010. Despite this knowledge, Plaintiffs did not seek amendment to the pleadings until February 28, 201l; 3 months after Defendants filed their Motion for Summary Judgment. Granting leave to amend at this stage in the litigation would significantly delay the resolution of the dispute and substantially prejudice Defendants by requiring it to engage in new discovery related to the new claim, prepare new defenses, and file additional motions. No good cause has been shown why Plaintiffs failed to add Milam by the scheduling deadline or at least prior to Defendants filing their Motion for Summary Judgment. For these reasons, the Court denies Plaintiffs' motion for leave to amend their complaint to add Betty Milam as a party Defendant.

## IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Defendants' motion for summary judgment [DN 25] is **GRANTED IN PART and DENIED IN PART**. It is **GRANTED** as to Plaintiffs' § 1983 claims against Grayson County Fiscal Court, Grayson County Detention Center, Jason Woosley, Donnie Stewart, Josh Meredith, Billy Swift, Marjorie Wells, Wanda Miller. It is further **GRANTED** as to the § 1983 claims against Betty Henderson in her official capacity and Darwin Dennison in his official capacity. It is **DENIED** as to the § 1983 claims against Betty Henderson in her individual capacity, Darwin Dennison in his individual capacity, and Grayson

County. It is further **DENIED** as to Plaintiffs' state-law negligence claims. Plaintiffs' Motion to Amend the Pleadings to add Betty Milam to this action [DN 32] is **DENIED** and Plaintiffs' Motion for Summary Judgment [DN 31] is **DENIED**. Lastly, Billy Lashley is voluntarily dismissed from this action. In sum, the claims that remain are: (1) a § 1983 claim against Betty Henderson in her individual capacity; (2) a § 1983 claim against Darwin Dennison in his individual capacity; (3) a § 1983 claim against Grayson County; and (4) the state-law negligence claims.

cc. Counsel of Record